We'll move to our second case this morning, Edwin Johnson v. CFTC. Mr. Volkler, whenever you're ready. Mr. Volkler. I represent appellant Edwin Johnson. Harsh and unfortunate. These are the words that the government uses to describe the treatment that my client suffered at the hands of the individuals on whom he provided information to the government that ultimately led to a successful prosecution, or excuse me, a successful civil enforcement action against 3RED and the U.R.O.I. statute. Specifically, my client watched his entire life be torn apart as a result of his compliance with the government in reliance on the government's promise that he would be treated as a whistleblower and upon a successful resolution of the civil enforcement action against 3RED and U.R.O.I. statute would be entitled to receive a monetary penalty as a result. Was it a promise? Yes, it was a promise, Your Honor. And how are we getting there? So there's been an issue that's sort of come up in the briefing, and it's a meaningful distinction between the promise of treatment as a whistleblower versus the promise of an award. Mr. Johnson was promised that he would be treated as a whistleblower by Ms. Hollinger. The issue that the government raises is that Mr. Johnson states, which is true, that Ms. Hollinger said, you'll be treated as a whistleblower, it's in the briefs, and you may be entitled to an award. That contingency, however, was contingent upon the government obtaining a successful resolution to the case. In the event that the government was unsuccessful in their prosecution or in their civil enforcement action against 3RED or U.R.O.I. statute, there would have been no opportunity for an award, irrespective. So the issue, I think, is related to the promise of treatment, which wasn't honored by the government both in terms of the award and in terms of his treatment in other respects, specifically. How are you defining treatment? Well, obviously, the designation of an individual as a whistleblower is one consideration. And so the promise that was made initially to my client was, if you come forward, you'll be treated as a whistleblower. And the reason that it's significant is because my client was concerned, and rightly so, about the effect of retaliation by the parties upon which he was informing. And they had stated, no, no, you don't have to worry because you'll be treated as a whistleblower. You'll be entitled to protections from the government. Those protections were never honored. Specifically, the government, without having opposing counsel seek any sort of order, simply turned over numerous documents and numerous identifying documents related to my client that only further subjected him to harsh treatment in state court by the people that he was informing on. But can I point out that, I mean, the rules are the rules. And it seems to me your argument is that there is a form, in a sense, of equitable estoppel against the government every time an employee makes a statement, such as you're going to be treated as a whistleblower or something, as you assert that Ms. Hollinger did. But there's a pretty robust line of cases that say that the government is not bound. There are, in fact, statutes and regulations that define when somebody is entitled to be treated as a whistleblower. And they're pretty open-ended. The commission did formally request information. They put the document hold on. They formally requested information. And that was the basis, really, on which the commission said you do not get that status. Well, and that dovetails with an issue which I believe is one of first impression in this court, Your Honor. Specifically, what is the scope of an individual's obligation pursuant to a subpoena and what happens upon the termination of that obligation? I think it goes without saying. Right, because your argument very much depends on, I think, a very narrow scope. Like here's a request. We fulfilled it. Now we're done and we're back on a clean slate, and I can come in as a first provider of information. But the commission doesn't see it that way. The commission is looking at this Rule 165.2, parenthesis O, about the provision of information made prior to any request from the commission. Not prior to a subpoena, not prior to any request. And if you read that in a certain way, he's just too late. I understand that that's how the commission reads it, Your Honor. And the ultimate problem with that, though, is that it leads to an absurd result. To take the commission's interpretation, my claim is essentially barred from ever being a whistleblower ever again. But why do we have to read it that way? Instead of just saying his status as a whistleblower for purposes of this three-red investigation is dictated by Rule 165.20. But, you know, if he's working for a different company, if he's doing other things, then we're outside the scope. It reminds me of the concept in civil procedure of a single claim or something, a common nucleus of operative fact, if you will. So I think there is an end point. But, Your Honor, I think the issue, though, is that that's not how the requests themselves were drafted. There was a document preservation letter, which was drafted in such a way as to be impossibly broad and to encompass essentially any conduct that occurred in any market after a defined date. And then there were subsequent subpoenas, which were incredibly narrow and defined towards very specific markets. The issue is, and I think it's addressed in the briefs, the argument or the actions that my client brought to the attention of the government were not being investigated and but for my client's involvement would never have been discovered. In fact, those actions had not even occurred at the time that the investigation was initiated. And the ultimate crux of all of this is that but for my client's involvement, the government would have never pieced these things together, which dovetails with his estoppel argument, essentially, which is that not only was he offhandedly promised, well, don't worry, you'll be treated as a whistleblower and you might be entitled to an award. He acted on that and he relied upon that. Much to his detriment, he incurred expense by bringing in his own counsel. He spent many days at the CFTC, not just providing information in a testimonial capacity, but sitting and working with attorneys, crafting argument, preparing for a preliminary injunction hearing. I sat with him during some of these meetings. And the government doesn't even deny when my client states that he drafted a portion of the complaint for the government. They could simply deny that and say it's untrue. They haven't denied that. And it also dovetails with another point that I've raised in the briefs, that in U.S. v. White, it references the obligation of the government states that my client hasn't presented any additional evidence. He hasn't put forth any corroborating evidence aside from his self-serving statement. Well, first of all, my client's not afforded- If I could interrupt for a minute because time is short. Your argument is premised on the assumption that these whistleblower awards are available to every cooperator. And in your case, your client provided robust cooperation. But that's not what the Act says, and that's not what the regulations say. There has to be a voluntary provision of original information before any request from the agency. Any is very broad. And here, the agency had already initiated an investigation and opened an investigation several years earlier and issued the document preservation order and issued a number of subpoenas. So by virtue of the text of the regulations and the statute, your client is foreclosed from an award. I don't- I understand the point, Your Honor. I think that- We just have a legal question here, not whether he deserves credit, whether he's got an argument in justice to get credit for what he did. That's not the point. It's whether this fits within the text of the statute and the regulations. I think that the issue, Your Honor, is that to read the statute as narrowly as the Commission has read the statute would be to create the absurd result that I've been describing, which is that essentially the government could issue subpoenas to anyone in the market at any time. They could go back to the office today and issue subpoenas to every registered commodities broker or trader, and then those people could subsequently be barred based on the plain language of the regulation as well as the broad nature of the request such that- What's absurd about that? Well, it would be absurd- We're talking about whistleblower awards. It would defeat the underlying purpose of the program, which is what the government has admitted, specifically to bring people with knowledge forward such that they could have these prosecutions, they could obtain these awards. That's the whole purpose of the program, and it retards that purpose to say that if you have ever been subject to some sort of request, no matter what the intervening circumstances are, no matter what the promises that are made to you by the government are, you are forever barred as just a matter of law. Obviously, that's the threshold issue, but I believe that it creates an absurd result. And, Your Honor, as I request, with your permission, to reserve my remaining time for rebuttal. Thank you. Mr. Juding? Good morning, Your Honors. Kyle Juding for the United States Commodity Futures Trading Commission. I would like to highlight three points that we submit to feed Mr. Johnson's petition to this court. First, under the Section 23 whistleblower statute and Part 165 regulations, to be eligible for a monetary award, as Your Honors have noted, the relevant language is that a CFTC whistleblower must have, quote, voluntarily provided original information to the commission that led to the successful enforcement of the covered action. The phrases voluntary submitted and voluntary submission, as Your Honors have noted, are specially defined at Rule 165.20 to mean that, quote, the provision of information be made prior to any request from the commission about a matter to which the information of whistleblower submission is relevant, even if the whistleblower's response is not compelled by a subpoena. So what is your response to Mr. Vogler's concern that this is kind of a lifetime ban or disqualification from a whistleblower award? Yes, Your Honor. I think, to Your Honor's point about the CIVPRO analog to a common nucleus offer fact, I think the language in Rule 165.20 that's most relevant to determining the scope, which there's no specific time duration, and the CFTC's subpoenas here were all ongoing, as noted. But is the phrase matter and relevant? And so by using the phrase matter, the investigation at issue was Mr. Osteicher's and Three Red's illegal spoofing, disruptive trading. Had it been the case that upon receiving the document requests and subpoenas, Mr. Johnson had proffered information about something unrelated, such as, say, a Ponzi scheme? To be clear, there's nothing on the record about that. But had he gone above and beyond the request, which was admittedly framed broadly, but intentionally so because these were investigation matters, so it's not unusual for the CFTC not to know the full scope of the potential illegal conduct before an investigation is conducted. And certainly it may broaden depending on what's turned up. So I take it the Commission doesn't think the addition of the VIX market, for example, transformed it into a different investigation, a different matter? That's correct. I think the Commission's language said, as Your Honors may have echoed, that that reading of the phrase matter would be far too narrow, which makes sense in this context because what the CFTC was looking at from the document preservation request and the subpoena was a particular form of spoofing and disruptive trading. They had identified specific markets based on a recommendation they had already received from the Chicago Mercantile Exchange prior to contacting Mr. Johnson. So it's not the case that Mr. Johnson was the first actor here who brought this information to the Commission's attention. Rather, he added additional information, having first been requested to do so, and that he may have gone above and beyond the bare minimum response required, as Your Honors noted, doesn't change his eligibility for a monetary award. It does entitle him to other whistleblower protections. Most notable among those in this case are the anti-retaliation provisions of Section 23. And we would note that the lawsuit that Mr. Johnson brought against his former employer, 3RED, in the Northern District of Illinois in 2015 is cited as the jurisdictional basis for doing so. Section 23H1B, which provides a private right of action to allow potentially retaliated against whistleblowers to sue those retaliated against them and would enable them to secure monetary compensation through that mechanism. To the extent that there's a concern about that sort of unfairness, I think looking at the plain language of the statute that Congress enacted, by including a voluntariness requirement, they were aware of what they were trying to incentivize, and it really was that first provision of information prior to receipt of point of contact from the CFTC or other relevant law enforcement authority. And it was not an incentive to provide the most information potentially possible after being contacted. And what is that 2015 case again? Yes, so the 2015 lawsuit is referenced in both the TCR form that Mr. Johnson submitted and I believe some of his supplemental filings as well. It's in the Northern District of Illinois. I believe the style is something like Johnson versus Oyster and 3RED. Thank you. And I would, unless your honors have other questions about the voluntariness prong, I'd ask to move on to Mr. Johnson's leadoff point about the promise. I think just looking at the plain language of that supposed promise, it was both conclusory, as your honors hinted at, and unsupported. What Mr. Johnson has provided, and he would be the person who was aware of what the language stated to him was, was that he would be treated like a whistleblower, which he was, and he's entitled to other Section 23 provisions as noted, and that he may be or could possibly be entitled to a monetary award. And following the normal review process set out by Section 23 and the Part 165 regulations, both the Commission and the initial claims review staff determined he was not because of the voluntariness issue. So while that is not a promise on its face, what was promised came to pass. I would note further, even if it had not, that in addition to the general rule against promissory estoppel against the government, there is a specific regulation that I don't believe was cited in the brief that is relevant here, and that's the last sentence of Rule 165.1, which provides, unless expressly provided for in this part, which is not the case here, and plaintiffs have never claimed otherwise, quote, no person is authorized to make any offer or promise or otherwise to bind the Commission with respect to the payment of any such award or the amount thereof. So by regulation, the Commission has expressly disclaimed any such promises. So I'm a little confused, though. I mean, on page 29 of your brief is where you're talking about this issue. And the Commission's position really stresses this is an unsubstantiated promise, but he does say in direct testimony it was this woman, Ms. Hollinger, and this is what she said. And so I wasn't sure whether your argument is there's no evidence in the record, because I don't think that's sustainable, or if it's really just Rule 165.1, you can't bind a government agency such as the CFTC by what random statements a particular employee says. That's a different argument. So which argument are you making? I think it's both arguments. I think the reason to add the second point is because I believe Mr. Johnson's argument itself has evolved in his reply brief where for the first time we have this contingency argument that really what Ms. Hollinger meant when she said this was, well, you're guaranteed a certain monetary award in my head, and you will be entitled to it as long as we prevail. But it's a big deal to be eligible to ask for the award, understanding that the Commission has wide discretion to decide whether to give an award and how much if they give an award, at least that's my understanding. But you've got to get through that eligibility gate first. And I think his argument is he thought he was at least that far down the road, and then he could make an equitable argument about how valuable his assistance was and all the rest of it. Yes, Your Honor. I think it's impossible to make that determination in advance because we don't know yet what the fully matter will encompass. Had it been the case that Mr. Johnson's cooperation had revealed a different line of illegality that was sufficiently disconnected from what the CFTC was already investigating, it may well have been the case that he would have been entitled to a monetary award for that different matter that he had identified. That's not the case here, and the Commission reasonably concluded that it wasn't. Right. Or at least eligible for. Yes. I understand that we're not talking about how much. That's not the issue. But eligibility, I thought, was his point. Yes, Your Honor. I think it's the same answer, is that before you can determine eligibility, I think you need to know the matter it's in reference to, including the covered action that results. And I think that's something, ex ante, that's very difficult to know. I would also note that at the time Mr. Johnson does come forward to provide this additional information, he is represented by counsel who would be on notice of these regulations even if he were not, although it seems that he reads CFTC informal guidance, so he may also have been aware of it. So at that time, to the extent that he had those concerns rather than rely on a stray comment by an individual CFTC staff member in an informal phone conversation, it probably would have behooved him, if that's what his cooperation were contingent on, to have fleshed out that agreement more in writing. All the cases Mr. Johnson cites to that effect involve more formalized plea agreements and immunity agreements that really are far afield from this, putting aside the criminal due process balance that those cases have. There really isn't anything that we're aware of on point that would bind the Commission to this sort of quote-unquote promise. And unless Your Honor has had any other questions, the CFTC will rest on its brief, and we would ask that the Court affirm the Commission's order. Thank you. Thank you. Mr. Goldwin. May it please the Court. Your Honors, ultimately the government's position is, don't trust what we tell you because if you don't go verify the rules yourself, then what we tell you is immaterial.  The government has stated, and Judge Wood identified very specifically, that yes, the threshold issue is whether or not my client believed that he was entitled to that treatment and entitled to make those equitable arguments. The government has admitted that it has not contested or addressed those equitable arguments. I'm out of time, but if Your Honors would permit, I would ask that my client, that this matter be, that the order be vacated and it be remanded either to the Commission or to an appropriate district court for fact-finding, which wasn't allowed in this matter. Thank you, Your Honors. Thank you. Our thanks to both counsel. The case is taken under advisement.